UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| DEANDRE LEWIS, | **AMENDED COMPLAINT** |
| Plaintiff, | |
| -against- | 15-CV-1511 (ARR) (VMS) |
| CITY OF NEW YORK, JOSEPH D'ALBERO, Individually, JOSEPH CENTNER, Individually, DOMINICK RASO, Individually, ROBERT ALBERTSON, Individually, and JOHN DOE 1 through 3, Individually, (the names John Doe being fictitious, as the true names are presently unknown), | **JURY TRIAL DEMANDED** |
| Defendants. | |

---

Plaintiff DEANDRE LEWIS, by his attorney, The Trainor Law Firm, P.C., complaining of the defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights, which are secured by these statutes and the Constitutions of the United States and the State of New York. Plaintiff also asserts supplemental state law claims.

## JURISDICTION

2.  Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

3.  This Court has jurisdiction to hear all claims in this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

4. Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury on all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

## PARTIES

6. Plaintiff DEANDRE LEWIS is a nineteen-year old African-American male and United States Citizen who resides in Richmond County, New York.

7. Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the CITY OF NEW YORK.

9. At all times hereinafter mentioned, the individually named defendants, JOSEPH D'ALBERO (Shield No. 8592), JOSEPH CENTNER (Shield No. 29186), DOMINICK RASO (Shield No. 13883), ROBERT ALBERTSON (Shield No. 10320), and JOHN DOE 1 through 3 (Shield Nos. unknown), were duly sworn police officers of the NYPD and were acting under the supervision of the NYPD and according to their official duties.

10. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York and/or the

CITY OF NEW YORK.

11. Each and all of the defendants' acts alleged herein were done by these defendants while acting within the scope of their employment with Defendant CITY OF NEW YORK.

## FACTS

"[Staten Island] has the fewest people of any borough in the city, but it has big problems between police and the citizens they're sworn to protect."

Barry Paddock, et al., Staten Island, borough where Eric Garner died, has highest number of most-sued NYPD officers, N.Y. DAILY NEWS, July 28, 2014.

12. On March 25, 2014, at approximately 5:00 p.m., Plaintiff DEANDRE LEWIS ("Mr. Lewis") was lawfully present in the vicinity of 425 Vanderbilt Avenue, Staten Island, New York, when Defendants Joseph D'Albero, Joseph Centner, Dominick Raso, Robert Albertson, and John Doe 1 through 3, without any lawful justification whatsoever, unlawfully assaulted him and illegally arrested and imprisoned him.

13. Before, during, and after the defendants assaulted him up and arrested him, Mr. Lewis committed no crime or offense. Likewise, at all times relevant to these events, Mr. Lewis was not behaving in a manner that would suggest to any reasonable police officer that he had done anything unlawful.

14. At the aforementioned time and place, Mr. Lewis was walking home when an unmarked van precipitously stopped adjacent to him, and some of the defendants, who were in plain clothes and did not identify themselves as police officers, exited the van and yelled at Mr. Lewis not to go anywhere. Likewise, some of the defendants arrived on scene in another unmarked vehicle. Afraid and unaware that the defendants were police officers, Mr. Lewis backed away and attempted to run home.

15. As Mr. Lewis ran, he tripped and fell on a grassy area. Thereafter, the defendants,

specifically, Defendants D'Albero and Centner, grabbed Mr. Lewis, turned him around, and rear-handcuffed him. The defendants then dragged Mr. Lewis, while he was rear-handcuffed, approximately five feet from the grassy area to the concrete street. As soon as the defendants dragged him to the street, they twice smashed Mr. Lewis's face onto the concrete ground, causing a large and painful abrasion on the right side of his face.

16. These defendants, specifically Defendants D'Albero, Centner, and Raso, actively participated in assaulting Mr. Lewis and failed to intervene to prevent the other defendants from doing so.

17. Despite lacking probable cause, reasonable suspicion, and having no legal justification whatsoever, the defendants placed Mr. Lewis in an NYPD vehicle. While in custody in this NYPD vehicle, Mr. Lewis requested medical treatment because he was experiencing a painful burning sensation from his facial injuries. The defendants ignored his pleas and transported him to the NYPD's 120th Precinct, where he remained unlawfully imprisoned and in pain, suffering the effects of being assaulted by the defendants.

18. The defendants placed Mr. Lewis in jail cell at the 120th Precinct, and he again requested medical treatment for the injuries the defendants inflicted upon him. The defendants informed Mr. Lewis that, if he went to the hospital, he would not be arraigned until March 27, 2014. This standard psychologically coercive tactic had the desired effect. Because Mr. Lewis just wanted to go home, upon the defendants informing him that his arraignment would be delayed a full day, he abandoned his pleas to go to the hospital for medical treatment.

19. The defendants, however, were not finished with him. Rather than take him to the hospital, they took Mr. Lewis to the bathroom. Upon placing Mr. Lewis in the bathroom, the defendants ordered him to strip naked and, upon doing so, to lift his genitals. They then ordered

Mr. Lewis to turn around and squat while they stared at him. Mr. Lewis was neither asked to consent, nor did he consent, to this unjustified strip search, but he did comply with the defendants' patently illegal order to strip naked. Completely naked, in pain and afraid, and falsely arrested, Mr. Lewis endured this gratuitous humiliation and invasive assault upon his dignity for roughly two minutes.

20. Mr. Lewis spent the night unlawfully imprisoned in the NYPD's 120th Precinct. The next day, the defendants transported Mr. Lewis to the Richmond County Criminal Court, where he remained unlawfully imprisoned until he was brought before a Criminal Court judge for arraignment on the baseless and false charges of resisting arrest and disorderly conduct, which were filed under docket Number 2014RI002924. These charges were filed based upon the false allegations of Defendants Albertson and D'Albero in collusion with Defendant Centner.

21. Defendants Albertson, D'Albero, and Centner manufactured the underlying false allegations and forwarded this information to the District Attorney's Office knowing that it would be used against Mr. Lewis at trial.

22. On March 26, 2014, at the end of the day, Mr. Lewis was arraigned on the false charges filed under docket number 2014RI002924. Upon the application of the District Attorney's Office, the Criminal Court adjourned the case in contemplation of dismissal.

23. Prior to his release at arraignment, Mr. Lewis spent almost twenty-five (25) hours falsely imprisoned.

24. On March 27, 2014, on account of worsening pain, concerns of infection, and a lack of treatment while in the custody of the NYPD, Mr. Lewis went to the Emergency Room of Staten Island University Hospital, where he was treated and released. Mr. Lewis was diagnosed with a facial abrasion and scrape over his right cheek and prescribed antibiotics for the infection

and bactroban ointment for the facial scrape.

25. On March 25, 2014, the defendants arrested and initiated criminal proceedings against Mr. Lewis despite their knowledge that they lacked probable cause, reasonable suspicion, or any justification whatsoever to do so.

26. The defendants initiated this false arrest and denial of the right to fair trial for the purpose of covering up their unlawful and unjustified assault upon Mr. Lewis.

27. All of the events leading up to and culminating in Mr. Lewis being subjected to excessive force, false arrest, illegal strip search, and denial of fair trial rights occurred while other NYPD officers, including, but not limited to, the individually named defendants, either participated in or failed to intervene in the illegal conduct described herein despite having every opportunity to do so.

28. All of these events occurred as a direct result of the unconstitutional policies, customs, or practices of Defendant CITY OF NEW YORK, including, but not limited to, the inadequate screening, hiring, retaining, training, promoting, compensating, disciplining, and supervising of its employees.

29. The underlying application of excessive force, false arrest, unreasonable strip search, and denial of the right to fair trial is not an isolated incident. Defendant CITY OF NEW YORK is aware, from lawsuits, notices of claims, press accounts, and complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK's Civilian Complaint Review Board, that many NYPD officers, including the defendants, abuse their authority and are insufficiently trained regarding the application of force in light of the facts and circumstances confronting them in the course of citizen-police encounters and what constitutes probable cause for an arrest. Further, these officers routinely apply excessive force in the course of these

encounters while their fellow police officers either actively participate in or fail to intervene to prevent this unconstitutional conduct; and, upon applying such force, these officers engage in falsification, including, but not limited to, charging victimized citizens with resisting arrest and disorderly conduct.  See, e.g., Graham v. City of New York, 928 F. Supp. 2d 610 (E.D.N.Y. Mar. 6, 2013) (lawsuit against the City of New York and individual NYPD officers for the officers' use of excessive force and violation of civil rights); Rodriquez v. City of New York, 10 Civ. 9570 (PKC) (KNF), 2012 WL 1658303, at *1 (S.D.N.Y. May 10, 2012) (same); Tucker v. City of New York, 704 F. Supp. 2d 347 (S.D.N.Y. 2010) (same); Williams v. City of New York, 06-CV-6601 (NGG), 2009 WL 3254465, at *1 (E.D.N.Y. Oct. 6, 2009) (same); Stroe v. City of New York, 02 CV 1036 (RRM) (LB), 2008 WL 4513823, at *1 (E.D.N.Y. Sept. 26, 2008) (same).  See also Ashley Southall & Marc Santora, Remembering a Man Whose Death Made Him a Symbol of a Divide: Mourners Demand Justice for Staten Island Man in Chokehold Case, N.Y. TIMES, July 23, 2014, http://www.nytimes.com/2014/07/24/nyregion/mans-dying-words-in-police-custody-become-rallying-cry-before-his-funeral.html?_r=0 ("'I can't breathe,' Eric Garner had said over and over again last Thursday after he was apparently placed in a chokehold by the police and wrestled to the ground, accused of illegally peddling cigarettes. . . .  The [NYPD] has banned the use of chokeholds since 1993.  In 1994, a Bronx man was killed by an officer using the grip.  Despite the ban, complaints of officers' using chokeholds have steadily come before the Civilian Complaint Review Board.  From 2009 to 2013, the board received 1,022 such complaints."); Rocco Parascandola & Thomas Tracy, NYPD puts Brooklyn cop on desk duty for reportedly stomping on suspect who lay on ground, N.Y. DAILY NEWS, July 26, 2014, http://www.nydailynews.com/new-york/brooklyn/brooklyn-desk-duty-reportedly-stomping-man-article-1.1880818; ("A Brooklyn cop was put on modified assignment Friday after

7

allegedly stomping on a suspect's head, authorities said. NYPD Officer Joel Edouard, 36, had subdued Jahmil-El Cuffee on suspicion of marijuana possession on Malcolm X Blvd. in Bedford-Stuyvesant at 8 p.m. Wednesday – and then he booted the man as he lay on the ground, officials said."); Robert Gearty, Bronx man suing NYPD for excessive force for a rough arrest captured on cell phone video, N.Y. DAILY NEWS, Sep. 10, 2012, http://www.nydailynews.com/new-york/bronx/bronx-man-suing-nypd-excessive-force-rough-arrest-captured-cell-phone-video-article-1.1156308 (A Bronx man sued the City of New York and the individual NYPD officers for excessive force: "The video lasts about one minute and appears to show then 19-year-old Luis Solivan being pummeled in the face several times by one officer as the other cop pinned him down. . . . [T]he two officers chased Solivan into his home for no reason, pepper-sprayed him and beat him with their hands and a walkie-talkie. Solivan's mother and two younger brothers were in the University Avenue apartment at the time. After Solivan was hand-cuffed, he was kicked and his head was thrust into a wall so hard the impact left a hole . . . ."); Daniel Beekman, Man wins $2.5 million in lawsuit against NYPD cops over using excessive force, N.Y. DAILY NEWS, Dec. 19, 2013, http://www.nydailynews.com/new-york/man-wins-2-5m-suit-nypd-article-1.1552534 (The plaintiff sued the City of New York and the individual NYPD officers and the jury awarded him $2,500.000.00 in damages at trial because an NYPD officer "threw him down and kicked him in the knee," causing a ripped ligament and serious knee damage, simply because the plaintiff was watching a fight outside of a bar.); Kevin Deutsch, Lawyer for drug suspect who was beaten by cops demands special prosecutor, N.Y. DAILY NEWS, Feb. 6, 2012, http://www.nydailynews.comnews/crime/lawyer-drug-suspect-beaten-cops-demands-special-prosecutor article1.1018037#ixzz2vs7snZ6M (describing the case of Jateik Reed, who was brutally assaulted by NYPD officers in the Bronx and the incident was captured on video).

8

See also NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "Bi-Annual Report, January - June 2013 Report," http://www.nyc.gov/html/ccrb/downloads/pdfCCRBsemi2013_jan_June.pdf ("In the first half of 2013, excessive use of force was alleged in 55% of complaints compared to 49% in 2012 . . . ."); NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, "2012 Annual Report," http://www.nyc.gov/html/ccrb/downloads/pdf/ccrb_annual_2012.pdf ("In 2012, 50% of all complaint contained one or more force allegations, compared to 48% in 2011.").

30. Indeed, Defendant CITY OF NEW YORK's notice is not limited to the plethora of complaints filed against it for its officers' unconstitutional behavior. As recently as July 28, 2014, the New York Daily News exposed how "Seven of the city's top 10 most-sued officers – and 14 of the city's top 50 most-sued officers – are assigned to a Staten Island narcotics unit working in the territory of the 120th Precinct." Barry Paddock, et al., Staten Island, borough where Eric Garner died, has highest number of most-sued NYPD officers, N.Y. DAILY NEWS, July 28, 2014, http://www.nydailynews.com/new-york/staten-island-highest-number-most-sued-nypd-officers-article 1.1882160#ixzz38rVpgLGc. The Daily News uncovered that detectives and officers assigned to the NYPD's Narcotics Bureau Staten Island, specifically, are notorious for violating individuals' civil rights, and that, generally, there appears to be a tolerated atmosphere of police-sponsored lawlessness on Staten Island. Id. ("The 120th Precinct also has the highest crime rate in the borough, the most use of the NYPD's controversial stop-and-frisk tactics in the borough, and is a leader in the number of substantiated police misconduct allegations to the Civilian Complaint Review Board.").

31. Defendant CITY OF NEW YORK is further aware that such conduct and improper training has often resulted in deprivations of civil rights. Despite such notice, Defendant CITY OF NEW YORK has failed to take corrective action. This failure caused the

defendants to violate Mr. Lewis's civil rights.

32. Moreover, upon information and belief, Defendant CITY OF NEW YORK was aware that, prior to this incident, the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, Defendant CITY of NEW YORK has retained these officers and failed to adequately train, supervise, and discipline them.

33. As a result of the foregoing, Plaintiff DEANDRE LEWIS has sustained, among other damages, physical injuries, substantial pain, mental injuries, emotional distress, embarrassment, humiliation, fear, and deprivation of his constitutional rights and liberty.

## FEDERAL CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION
(Deprivation of Rights Under 42 U.S.C. § 1983)

34. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "33" with the same force and effect as if fully set forth herein.

35. All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

36. All of these aforementioned acts deprived Plaintiff DEANDRE LEWIS of the rights, privileges, and immunities guaranteed to United States citizens by the Fourth and Fourteenth Amendments to the United States Constitution and were in violation of 42 U.S.C. § 1983.

37. The individual defendants carried out these illegal acts in their capacity as police officers, with the entire actual and/or apparent authority attendant to their office.

38. The individual defendants carried out these illegal acts in their capacity as police

officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of the NYPD.

39. The defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

40. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A SECOND CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

41. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

42. The defendants arrested Plaintiff DEANDRE LEWIS without probable cause or legal privilege, causing him to be detained against his will for an extended period of time and subjected to physical restraints.

43. The defendants caused Plaintiff DEANDRE LEWIS to be falsely arrested and unlawfully imprisoned, resulting in Plaintiff being put in fear for his safety, humiliated, embarrassed, afraid, and deprived of his liberty.

44. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Excessive Force under 42 U.S.C. § 1983)

45.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "44" with the same force and effect as if fully set forth herein.

46.     The defendants employed force against Plaintiff DEANDRE LEWIS that was excessive, objectively unreasonable, and in a clear violation of Plaintiff's constitutional rights.

47.     At no time did Plaintiff DEANDRE LEWIS pose a threat to the safety of the defendants or anyone else, nor resist or attempt to evade arrest.

48.     As a result of the defendants' conduct, Plaintiff DEANDRE LEWIS was subjected to excessive force and sustained physical injuries, including, but not limited to, a painful facial abrasion and scrape over his right cheek; substantial pain; persistent discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

49.     As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Illegal Strip Search under 42 U.S.C. § 1983)

50.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "49" with the same force and effect as if fully set forth herein.

51.     The defendants ordered Plaintiff DEANDRE LEWIS to strip naked, subjecting him to a strip search without probable cause, particularized suspicion, legal privilege, or reasonable suspicion that he was concealing weapons or other contraband.

52. The defendants caused Plaintiff DEANDRE LEWIS to be stripped searched, resulting in Plaintiff being put in fear for his safety, humiliated, embarrassed, afraid, deprived of his most basic dignity interests, and subjected to a highly degrading and intrusive search.

53. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A FIFTH CAUSE OF ACTION**
(Denial of the Right to Fair Trial under 42 U.S.C. § 1983)

54. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "53" with the same force and effect as if fully set forth herein.

55. The defendants falsified the information against Plaintiff DEANDRE LEWIS likely to influence a jury's decision and forwarded this false information to the District Attorney's Office for use in the underlying prosecution of Plaintiff.

56. The defendants caused Plaintiff DEANDRE LEWIS to be prosecuted upon the false information that they submitted to the District Attorney's Office until the underlying prosecution was adjourned in contemplation of dismissal on March 26, 2014.

57. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A SIXTH CAUSE OF ACTION**
(Failure to Intervene under 42 U.S.C. § 1983)

58. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

59. The defendants had an affirmative duty to intervene on behalf of Plaintiff DEANDRE LEWIS whose constitutional rights were being violated in their presence by other officers, including the individual defendants.

60. The defendants failed to intervene to prevent the unlawful conduct described herein despite having every opportunity to do so.

61. As a result of the defendants' conduct, Plaintiff DEANDRE LEWIS was subjected to excessive force; false arrest; illegal strip search; denial of his right to a fair trial; his liberty was restricted for an extended period of time; he was put in fear for his safety; he was physically brutalized and in pain; and he was humiliated and subjected to handcuffing; physical restraints; and ultimately an extended period of imprisonment.

62. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

63. All of the foregoing acts of the defendants deprived Plaintiff DEANDRE LEWIS of federally protected rights, including, but not limited to, the right:

      A.    To be free from deprivation of civil rights and liberty;

      B.    To be free from false arrest/unlawful imprisonment;

      C.    To be from excessive force;

      D.      To be from unreasonable and illegal strip search;

      E.      To be free from denial of the right to a fair trial; and

      F.      To be free from the failure to intervene.

64. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## STATE CLAIMS

65. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66. Within ninety (90) days after the claim herein accrued, Plaintiff duly served upon, presented to, and filed with, the CITY OF NEW YORK, a Notice of Claim setting forth all the facts and information required under the General Municipal Law 50-e.

67. The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof, and more than thirty (30) days have elapsed since the presentation of such claim to the CITY OF NEW YORK.

68. This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

69. Plaintiff has complied with all conditions precedent to maintaining this action.

70. This action falls within one or more of the exceptions outlined in CPLR § 1602.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
(Assault under the laws of the State of New York)

71. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72. As a result of the defendants' conduct, Plaintiff DEANDRE LEWIS was placed in apprehension of imminent harmful and offensive bodily contact.

73. As a result of the defendants' conduct, Plaintiff DEANDRE LEWIS has suffered pain and mental anguish, together with fear, apprehension, embarrassment, and humiliation.

74. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
(Battery under the laws of the State of New York)

75. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "74" with the same force and effect as if fully set forth herein.

76. The defendants made offensive contact with Plaintiff DEANDRE LEWIS by forcibly touching him, smashing his face onto the concrete ground, handcuffing him, physically detaining him, and strip searching him without legal privilege or consent.

77. As a result of the defendants' conduct, Plaintiff DEANDRE LEWIS has suffered substantial pain and physical injury, including, but not limited to, a painful facial abrasion and scrape over his right cheek; substantial pain; persistent discomfort; physical and psychological distress; and further physical and psychological injuries yet to be revealed.

78. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in

amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
(False Arrest under the laws of the State of New York)

79. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80. The defendants arrested Plaintiff DEANDRE LEWIS without probable cause or legal privilege.

81. The defendants detained Plaintiff against his will for an extended period of time and subjected him to physical restraints.

82. As a result of the defendants' conduct, Plaintiff was unlawfully imprisoned in violation of the laws of the State of New York.

83. As a result of the defendants' conduct, Plaintiff DEANDRE LEWIS has suffered physical and mental injuries, along with fear, apprehension, embarrassment, humiliation, and loss of freedom.

84. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A TENTH CAUSE OF ACTION**
(*Respondeat Superior* liability under the laws of the State of New York)

85. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86. Defendant CITY OF NEW YORK is vicariously liable for the acts of its employees and agents who were on duty and acting in the scope of their employment when they engaged in the wrongful conduct described herein.

87. As police officers with the NYPD, the individual defendants were employees of Defendant CITY OF NEW YORK and were acting within the scope of their employment when they engaged in the wrongful conduct described herein.

88. As a result of the defendants' conduct, Plaintiff DEANDRE LEWIS has suffered substantial pain and physical injury, and mental anguish, together with fear, apprehension, embarrassment, and humiliation, and an extended period of unlawful imprisonment and deprivation of his liberty.

89. As a result, Plaintiff DEANDRE LEWIS is entitled to compensatory damages in amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff DEANDRE LEWIS demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)   full and fair compensatory damages in an amount to be determined by a jury;

(B)   punitive damages against the individual defendants in an amount to be determined by a jury;

(C)   reasonable attorneys' fees and the costs and disbursements of this action; and

(D)   such other and further relief as the Court deems just and proper.


Dated:   New York, New York
             August 28, 2015

               Respectfully submitted,

               **THE TRAINOR LAW FIRM, P.C.**
               26 Broadway, Suite 2100
               New York, New York 10004
               Tel: (212) 323-7410
               Fax: (212) 323-7411

               By:  *Craig Trainor*
                  CRAIG TRAINOR (CT 1823)

               Attorney for Plaintiff DEANDRE LEWIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DEANDRE LEWIS,

                Plaintiff,

      -against-

CITY OF NEW YORK, JOSEPH D'ALBERO, Individually, JOSEPH CENTNER, Individually, DOMINICK RASO, Individually, ROBERT ALBERTSON, Individually, and JOHN DOE 1 through 3, Individually, (the names John Doe being fictitious, as the true names are presently unknown),

                Defendants.

15-CV-1511 (ARR) (VMS)

---

# AMENDED COMPLAINT

**THE TRAINOR LAW FIRM, P.C.**
Attorney for Plaintiff
26 Broadway, Suite 2100
New York, New York 10004